IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KARL JOHNSON, #314-293,<br>  Plaintiff, | *<br>* |
| v. | CIVIL ACTION NO.  DKC-05-154 |
| | * |
| EASTERN CORRECTIONAL<br>  INSTITUTION, et al.,<br>  Defendants. | * |

\*\*\*\*\*\*\*

**<u>MEMORANDUM</u>**

On January 19, 2005, Plaintiff, presently incarcerated at the Maryland Correctional Institution in Jessup, Maryland, filed a pro se action pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to protect him from assault at the hands of a fellow prisoner while he was incarcerated at the Eastern Correctional Institution ("ECI") in Westover, Maryland. Paper No. 1.  The case now is before the court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed on behalf of Defendants Eastern Correctional Institution, former Warden Robert Kupec, Michael Miller, Sgt. Calvin Leak, Ernest W. Caton, Jr., Sgt. Roseann Labo, and Lt. Aubrey Fletcher,[1] and Plaintiff's response thereto.[2] Paper Nos.

---

[1] Service of process was not effected on Sgt. Field or C.O. II Byrd.  For the reasons that follow, if Defendants Field and Byrd were properly served with the Complaint and Summons they would be entitled to summary judgment.

[2] The court is also in receipt of Plaintiff's Motion for Appointment of Counsel. Paper No. 38.  A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).  The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant.  *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).  The court finds from its review of the complaint and additional documents filed by Plaintiff that he is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty.  Furthermore, the court concludes that Plaintiff's complaint is not unduly complex.  Therefore, in the exercise of its discretion, the court shall deny Plaintiff's request for appointment of counsel.

34 and 37. No hearing is needed to resolve the facts and issues presented in this case. *See* Local Rule 105.6 (D. Md. 2004).

## I. STATEMENT OF FACTS

Plaintiff contends that on November 2, 2004, fellow inmate Steven Bradford assaulted him. Paper No. 1. Plaintiff states that he completed several administrative remedy procedure forms ("ARPs") regarding the assault but all were ignored. *Id.* Plaintiff further alleges that he wrote to Warden Michael Kupec "on several occasions, to inform him [he] was in danger within ECI." and that on October 13, 2004, Plaintiff asked COII Byrd to move him out of Housing Unit Seven. Paper No. 6. On October 13, 2004, Plaintiff advised Sgt. Leak that his problem was not his cell mate but "someone else." *Id.* Plaintiff states that on an unspecified date he asked Mr. Caton, his case manager, to have him moved, and that on December 16, 2004, he spoke with Sgt. Lobo regarding the problems he was having. Plaintiff also states that he informed Lt. Fletcher of his "problems" prior to the November assault. Lt. Fletcher advised Plaintiff that he could not help Plaintiff, unless Plaintiff "chose to check-in." *Id.*

According to the unrefuted records before the court, on November 2, 2004, Officer Deshields received a radio call that there was a possible fight in the tier's shower. Paper No. 34, Ex. 1. Deshields observed Steven Bradford and Plaintiff engaged in a fight with Plaintiff on top of Bradford as they wrestled on the shower floor. *Id.* Deshields ordered both inmates to break their hold on each other. The inmates complied and once separated were handcuffed and escorted to the medical department.

Plaintiff had abrasions on both knees and his right wrist. He also had a bite mark on his right shoulder and a dark purple mark on his left foot. Bradford had bite marks on his left upper back and the left side of his neck and abrasions on his left knuckle, right thumb, and both knees. Bradford's left upper

and lower eyelids had open wounds and the upper eyelid was swollen. Both inmates' injuries were treated and they were released to custody. *Id*., Ex. 3

Plaintiff gave two statements to the investigating officer alleging that Bradford threatened to rape him and he defended himself. *Id.* Ex. 4. Bradford refused to give a statement. Both inmates were served with rule infractions and both were found guilty and received disciplinary segregation time. *Id*. Ex. 5 and 6.

On February 3, 2005, Warden Stouffer advised Plaintiff that the incident had been referred to the Internal Investigative Unit (IIU) and no further action would be taken through the ARP process. *Id*., Ex. 8. On the same date, Sgt. Forfest, the IIU investigator, interviewed Plaintiff who stated that Bradford tried to rape him. Plaintiff also stated that he had advised his Public Defender that he had been having trouble with Bradford prior to the assault. Plaintiff did not report to Sgt. Forrest that he had reported any problems with Bradford to correctional staff at ECI. *Id*., Ex. 9.

On January 26, 2005, Sgt. O'Leary of IIU interviewed Bradford. Bradford told O'Leary that Plaintiff walked up to the shower stall and told Bradford to get out so he could shower first. Bradford told Plaintiff he could "wait his turn." Plaintiff walked away but returned immediately and unsuccessfully threw a punch at Bradford. The two then fought for approximately 3-4 minutes until officers arrived and broke it up. Bradford advised O'Leary that he was on administrative segregation pending a transfer and stated that he was being transferred because he owed debts to other inmates that he was not able to pay. He refused to discuss the debts further. *Id*.

Sgt. Forrest interviewed Plaintiff again on January 31, 2005. Plaintiff maintained that the fight occurred because Bradford tried to rape him. He admitted punching Bradford in the eye, stating that it was

3

done in self defense. *Id.* O'Leary re-interviewed Bradford on February 17, 2005. Bradford denied attempting to rape Plaintiff and denied owing him money. Bradford stated that he and Plaintiff had once "had words" but he did not remember the date or the subject matter. The November 4, 2005 incident was discussed with an Assistant State's Attorney for Somerset County who advised that there would be no prosecution in the matter. *Id.*

## II. STANDARD OF REVIEW

In order to survive a defendant's properly supported motion for summary judgment, a plaintiff is required to produce some evidence to support each of his constitutional claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 322. While the facts and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion, *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputed issues of material fact will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.   11th Amendment

Plaintiff has named the Eastern Correctional Institution as a Defendant. Paper No. 1. Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune

from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Penhurst State School and Hospital v. Halderman*, 465 U. S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see* Md. State Gov't Code Ann., § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus Plaintiff's complaint against Eastern Correctional Institution is barred by the Eleventh Amendment.

**B.     Failure to Protect**

Plaintiff complains that his right to be free from cruel and unusual punishment has been violated due to prison officials' failure to protect him from assault by another prisoner. The Eighth Amendment does recognize this right. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994),

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. *See id.* at 834.

The undisputed records before the court reveal that Plaintiff suffered abrasions as a result of the November 2, 2004 incident. Assuming, arguendo, that the abrasions were held to satisfy the first prong of the *Farmer* test, proof of the second element is more problematic.

5

Deliberate indifference in the context of a failure to protect claim means that defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety.").

There is no dispute that on November 2, 2004, Plaintiff and Bradford were involved in an altercation. Upon notification of the fight, correctional staff promptly responded to the scene, broke up the fight, and transported the inmates for medical care. An investigation was undertaken and Plaintiff and Bradford reported vastly different versions regarding who began the fight.

Plaintiff claims, in his Complaint that he wrote Warden Kupec "on several occasions, to inform him [he] was in danger within ECI." Plaintiff also alleges that on October 13, 2004, he asked COII Byrd to move him out of Housing Unit Seven and that he advised Sgt. Leak that there was "someone [other than his cell mate] that he was having trouble with." Plaintiff states that on an unspecified date he asked Mr. Caton, his case manager, to have him moved and on December 16, 2004, after the assault, he spoke with Sgt. Lobo regarding the "problems" he was having. Plaintiff also states that he informed Lt. Fletcher of his "problems" prior to the November assault. Lt. Fletcher allegedly advised Plaintiff that he could not help him, unless Plaintiff "chose to check-in." In each of the instances, Plaintiff fails to allege -- much less demonstrate-- that he specifically told the named Defendants that he was afraid of Bradford. Rather,

6

Plaintiff's allegations denote a general fear, vague problems, and an unspecified desire to move to a different housing tier. Contemperanous in time to the assault, Plaintiff did not advise any prison staff of a problem with Bradford. Rather, Plaintiff told the IIU investigator that he alerted his Public Defender, not correctional staff, to problems he had with other inmates. *Id*., Ex. 9.

As previously noted, prison officials have a duty to act on a known risk to inmate safety. In a prison setting, confrontations among inmates are a daily occurrence as prisoners engage in an unending struggle for position and power. Such altercations among inmates are common and are familiar to prison staff. While recognizing that advance notification of a substantial risk of assault posed by a particular fellow prisoner is not required to sustain a claim under the Eighth Amendment, *see Farmer* 511 U.S. at 849, the record is devoid of evidence that Defendants were subjectively aware that Plaintiff was subject to an excessive risk of harm. Nothing suggests that Plaintiff told Defendants that he was likely to be assaulted by Bradford or that Bradford was out to cause him harm. Moreover, there is no evidence that Bradford was on Plaintiff's known enemy list or that Plaintiff sought protective custody. In short, Plaintiff has failed to come forth with any evidence that prison officials were in fact aware of an excessive risk of harm to his safety.

Even if the court could conclude that Defendants were aware of the risk of harm to Plaintiff at the hands of Bradford, the evidence of record simply is not sufficient to show that Defendants were deliberately indifferent to the consequences that might flow from such risk. "Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure " 'reasonable safety.' " *Farmer* 511 U.S. at 844. There is nothing in the record

that suggests that the officer on duty did not respond promptly to end the fight by radioing for assistance as soon as he became aware of the attack. Plaintiff has presented no evidence to show that Defendants failed to respond reasonably in the face of the attack or should have taken any course of action after Plaintiff relayed a generalized fear and desire to be moved off the tier. Plaintiff has failed to prove that Defendants were deliberately indifferent to his safety. Accordingly, Defendants' Motion for Summary Judgment shall be granted by way of a separate Order.

| 11/30/05 | /s/ |
|---|---|
| Date | DEBORAH K. CHASANOW<br>United States District Judge |